# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| JAMAL D. BIRKLEY,<br><br>                    Plaintiff,<br><br>v.<br><br>DR. MANUEL JOSEPH, KATHY LEMENS, JEAN LUTSEY, and SUSAN PETERS,<br><br>                    Defendants. | Case No. 18-CV-1024-JPS<br><br>**ORDER** |

      Plaintiff, a prisoner proceeding *pro se*, filed a complaint against Manuel Joseph ("Joseph"), Kathy Lemens ("Lemens"), Jean Lutsey ("Lutsey") and Susan Peters ("Peters") (collectively "Defendants"), alleging violations of his constitutional rights when he was not properly treated for an injury at Green Bay Correctional Institution ("GBCI"). (Docket #1). On October 18, 2018, Magistrate Judge William E. Duffin screened the complaint and allowed Plaintiff to proceed on his claim for deliberate indifference to a serious medical need in violation of the Eighth Amendment. (Docket #16). The case was subsequently reassigned to this branch of the Court for disposition.

      Shortly thereafter, Defendants filed motions for partial summary judgement, in which they argued that Plaintiff failed to exhaust his administrative remedies as to some of the claims in his complaint. (Docket #31, #38). Those motions are now fully briefed, and for the reasons

explained below, will be granted.[1] The Court will also address several other pending motions, and deny as moot Peters' motion for summary judgment. (Docket #80).

1.  **STANDARD OF REVIEW**

    1.1 **Summary Judgment**

    Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016).

    1.2 **Exhaustion of Prisoner Administrative Remedies**

    The Prison Litigation Reform Act ("PLRA") establishes that, prior to filing a lawsuit complaining about prison conditions, a prisoner must exhaust "such administrative remedies as are available[.]" 42 U.S.C. § 1997e(a). To do so, the prisoner must "file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Pozo v.*

---

[1] Peters' motion to strike Plaintiff's supplementary partial summary judgment responses (Docket #76) will be granted. Plaintiff timely submitted his oppositions to Defendants' partial motions for summary judgment, *see* (Docket #46–#53), and did not move the Court to amend his submissions. The supplementary responses, (Docket #66–#73), will therefore be disregarded for the purposes of the motions for partial summary judgment.

*McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002). He must do so precisely in accordance with those rules; substantial compliance does not satisfy the PLRA. *Id.*; *Burrell v. Powers*, 431 F.3d 282, 284–85 (7th Cir. 2005). A suit must be dismissed if it was filed before exhaustion was complete, even if exhaustion is achieved before judgment is entered. *Perez v. Wis. Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Several important policy goals animate the exhaustion requirement, including restricting frivolous claims, giving prison officials the opportunity to address situations internally, giving the parties the opportunity to develop the factual record, and reducing the scope of litigation. *Smith v. Zachary*, 255 F.3d 446, 450–51 (7th Cir. 2001). Failure to exhaust administrative remedies is an affirmative defense to be proven by Defendants. *Westefer v. Snyder*, 422 F.3d 570, 577 (7th Cir. 2005).

The Wisconsin Department of Corrections maintains an Inmate Complaint Review System ("ICRS") to provide a forum for administrative complaints. Wis. Admin. Code § DOC 310.04. There are two steps an inmate must take to exhaust their administrative remedies under the ICRS. First, the inmate must file an offender complaint with the Institution Complaint Examiner ("ICE") within fourteen days of the events giving rise to the complaint. *Id.* § DOC 310.07(2). The ICE may reject the complaint or return the complaint to the inmate and allow him or her to correct the issue(s) and re-file within ten days. *See id.* § DOC 310.10(5),(6). If the complaint is rejected, the inmate may appeal the rejection to the appropriate reviewing authority within ten days. *Id.* § DOC 310.10(10).[2] If the complaint is not

---

[2]The ICRS defines a "reviewing authority" as "a person who is authorized to review and decide an inmate complaint." Wis. Admin. Code § DOC 310.03(15).

rejected, the ICE issues a recommendation for disposing of the complaint, either dismissal or affirmance, to the reviewing authority. *Id.* § DOC 310.10(9),(12). The reviewing authority will affirm or dismiss the complaint in whole or in part, or return the complaint to the ICE for further investigation. *Id.* § DOC 310.11(2).

Second, if the ICE recommends dismissal and the reviewing authority accepts it, the inmate may appeal the decision to the Corrections Complaint Examiner ("CCE") within fourteen days. *Id.* §§ DOC 310.09(1), 310.12. The CCE issues a recommendation to the Secretary of the Department of Corrections who may accept or reject it. *Id.* §§ DOC 310.12(2), 310.13. Upon receiving the Secretary's decision, or after ninety days from the date the Secretary received the recommendation, the inmate's administrative remedies are exhausted. *Id.* § DOC 310.13(4).

## 2. RELEVANT FACTS

In April 2016, Plaintiff tore his anterior cruciate ligament ("ACL") during a basketball game while incarcerated at GBCI. The injury was never treated, and, over time, the tear worsened, resulting in extreme pain and limited mobility for Plaintiff.

In July 2017, Plaintiff alerted medical staff at GBCI to his worsening condition by submitting complaint GBCI-2017-18761. In this complaint, Plaintiff alleged that Joseph and Lutsey denied him proper medical treatment by failing to provide a knee brace in restrictive housing, and by failing to give him effective pain medication. The complaint was rejected and appealed to the CCE, who dismissed the complaint on the grounds that the knee brace had not been deemed medically necessary in restrictive housing, and the Plaintiff had otherwise been receiving care. *See* (Docket #48-1 at 9). The Secretary affirmed the dismissal. *Id.* at 10.

On September 5, 2017, Plaintiff submitted GBCI-2017-22633, in which he complained that as a result of his untreated ACL, his leg gave out and he fell in his cell. (Docket #34-4 at 11). After his fall, he alleged that GBCI staff, including correctional officers Greer and Howard, as well as Nurse Baier, failed to provide him with medical attention. The complaint was rejected on the grounds that Plaintiff had a plan of care, and therefore was not being denied medical attention. Plaintiff appealed the rejection to the CCE, who dismissed the complaint. (Docket #34-4 at 9). The Secretary affirmed the dismissal. *Id.*

On September 13, 2017, Plaintiff submitted GBCI-2017-23334, in which he alleged that GBCI delayed in treating the pain associated with his torn ACL, and had denied him medical treatment. Specifically, he explains that Peters denied him a medical shower chair, which he needed because he could not bear weight on his leg for long periods of time. The complaint was rejected because "showers don't happen for long periods of time;" because the chair had been deemed not medically necessary for a torn ACL; and because the ACL tear was not confirmed. (Docket #34-5 at 2). Evidently, the complaint examiner believed that the ACL injury occurred before Plaintiff was in prison, which Plaintiff disputes. The reviewing authority approved the complaint examiner's rejection, but modified the rejection to include MRI results to confirm the ACL tear. *Id.* at 3. The rejection was appealed to the CCE Office. *Id.* at 4. The CCE accepted the reviewing authority's modification and dismissed the complaint. *Id.* at 5. The Secretary affirmed the dismissal with modification. *Id.* at 6.

On September 27, 2017, Plaintiff submitted GBCI-2017-24687, which alleged that on September 12, 2017, Lemens purposefully blocked Plaintiff's access to a medical shower chair by incorrectly telling Peters that one of the

supervisors would not approve of the chair. The complaint was rejected because Plaintiff had already raised the shower chair issue in GBCI-2017-23334. (Docket #34-2 at 4). Plaintiff did not submit a request for review of the rejection.

On October 4, 2017, Plaintiff submitted another complaint, GBCI-2017-25288, alleging that Lemens had misinformed Peters about the lack of approval of a medical chair, and that Lutsey had disregarded Plaintiff's serious medical need. This, too, was rejected for being duplicative of GBCI-2017-22633 and GBCI-2017-23334. (Docket #34-3 at 4). Plaintiff did not submit a request for review of this complaint.

Finally, on February 8, 2018, Plaintiff filed GBCI-2018-3513, alleging that HSU staff had delayed in repairing his torn ACL. The complaint was rejected on the grounds that Plaintiff had been using a knee brace since August 2017, and was receiving medical attention and care with regard to the torn ACL. The reviewing authority dismissed the complaint, and the CCE dismissed the appeal. The Secretary upheld the decision to dismiss the appeal. (Docket #50-1 at 20).

3. **ANALYSIS**

   3.1 **Exhaustion**

Plaintiff has exhausted four of his complaints: GBCI-2017-18761 (making allegations against Joseph and Lutsey for denial of medical treatment), GBCI-2017-22633 (making allegations about falling in his cell due to the denial of medical treatment with regard to his torn ACL), GBCI-2017-23334 (making allegations against Peters for denial of medical treatment), and GBCI-2018-3513 (making general allegations of denial of medical treatment with regard to his torn ACL). Plaintiff's administrative remedies regarding complaints GBCI-2017-24687 and GBCI-2017-25288,

which are the only complaints to levy accusations against Lemens, have not been exhausted. Plaintiff argues that his administrative remedies were exhausted by virtue of the fact that complaints GBCI-2017-24687 and GBCI-2017-25288 were rejected as duplicative of GBCI-2017-22633 and GBCI-2017-23334, which were exhausted. (Docket #49 at 2). While this argument is eminently logical, the fact remains that under the DOC's regulations, Plaintiff was required to seek review of these rejections, and then appeal them. Accordingly, the partial motion for summary judgment for failure to exhaust administrative remedies, (Docket #31), must be granted. Plaintiff argues that Lemens should not be dismissed because her involvement is implied by her job description in his other complaints, even if she is not explicitly named. (Docket #49 at 2). Although Plaintiff occasionally refers to "HSU staff," his complaints specifically name the various individuals who were allegedly involved in each instance of denial of medical care. There is, therefore, no basis to impute Lemens' involvement in these complaints in the absence of her being explicitly named. Because the complaints as to Lemens have not been administratively exhausted, Lemens must be dismissed from the case. *Pozo*, 286 F.3d at 1025.

Peters also argues that the claims regarding Plaintiff's fall in his cell and his inadequate pain treatment must be dismissed as to her for failure to exhaust, because she was not named in either GBCI-2017-22633 or GBCI-2018-3513. *See* (Docket #39). The Court will grant that motion. Accordingly, the claims against Peters regarding deliberate indifference to Plaintiff's worsening ACL tear will be limited to the allegations in GBCI-2017-23334, i.e., that Peters was deliberately indifferent to Plaintiff's serious medical need when she denied him access to a shower chair.

### 3.2 Miscellaneous Motions

The Court takes this opportunity to address a few miscellaneous motions that the parties have filed in this case. First, Plaintiff submitted a motion for access to the law library, which he was temporarily denied due to his placement in the restrictive housing unit. (Docket #36). The Court has no power over Plaintiff's access to the law library or to his access to materials while in restrictive housing, and therefore must deny the motion. Plaintiff subsequently filed a motion to extend the discovery and dispositive motion deadline, in which he explained that he has only been able to obtain access to the library in 50-minute increments. (Docket #92). Defendants do not oppose the extension of time. (Docket #93). The Court is mindful that additional time may be needed for a *pro se* litigant to conduct the research and writing necessary to successfully litigate his case. The Court will therefore grant Plaintiff's motion to modify the scheduling order. *Id.* However, the discovery requests referenced in that motion must be made directly to the Defendants.

With respect to Plaintiff's other motions, the Court will deny Plaintiff's motion for an extension of time (Docket #37) as moot because it is essentially an objection to the discovery of his psychological files. Plaintiff's discovery objections should be made to the Defendants rather than to the Court. Fed. R. Civ. P. 5(d)(1)(A). If Defendants eventually seek to introduce psychological evidence that has a low probative value and will be prejudicial to Plaintiff, he is free to object on those grounds at that time. *See* Fed. R. Evid. 403.

Plaintiff's motion for an off-site specialist, (Docket #45), must also be denied. Inmates are not constitutionally entitled to the medical providers of their choice. *See Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997) ("Under

the Eighth Amendment, [an inmate] is not entitled to demand specific care."). To the extent that Plaintiff seeks an expert witness through this motion, at this time, Court finds that an expert is not necessary to determine whether Plaintiff's Eighth Amendment rights were violated. Plaintiff's medical records will show whether or not he had an ACL tear, which will allow a jury to determine whether Plaintiff had a serious medical need. *Ledford v. Sullivan*, 105 F.3d 354, 361 (7th Cir. 1997) (finding no expert needed where there were no "probing, complex questions concerning medical diagnosis and judgment."). The parties' discovery responses, affidavits, and depositions will allow a jury to determine whether Defendants were deliberately indifferent to a serious medical need.

Finally, Plaintiff's motion for legal loan and an extension of time (Docket #54) will be granted in part and denied in part. Defendants filed a response to this motion, in which they, too, requested additional time to secure discovery and file dispositive motions. (Docket #62 at 3). The Court has no power to force an institution to issue Plaintiff a legal loan. However, the Court can extend time to file discovery and dispositive motions, which it will do.[3]

4.  **CONCLUSION**

For the reasons explained above, the Defendants' motions for partial summary judgment will be granted. Additionally, the parties' motions for an extension of time will be granted. Discovery must conclude **within thirty (30) days** of the entry of this order, and dispositive motions must be submitted **within forty-five (45) days** of the entry of this order. Relatedly,

---

[3] Defendant Peters' motion to join Defendants Lemens, Joseph, and Lutsey's motion to extend time, (Docket #77), will be granted.

Defendant Peters' motion for summary judgment (Docket #80) will be denied as moot in order to allow Peters the opportunity to benefit from additional discovery.

Accordingly,

**IT IS ORDERED** that Defendants Manuel Joseph, Kathy Lemens, and Jean Lutsey's motion for partial summary judgment for Plaintiff's failure to exhaust administrative remedies (Docket #31) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's claims in GBCI-2017-24687 and GBCI-2017-25288 be and the same are hereby **DISMISSED without prejudice** for failure to exhaust administrative remedies;

**IT IS FURTHER ORDERED** that Defendant Kathy Lemens be and the same is hereby **DISMISSED** from this case;

**IT IS FURTHER ORDERED** that Defendant Susan Peters' motion for partial summary judgment on exhaustion grounds (Docket #38) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the allegations in paragraphs six and nine in the complaint (Docket #1) be and the same are hereby **DISMISSED without prejudice** as to Defendant Susan Peters;

**IT IS FURTHER ORDERED** that Plaintiff's motion for access to law library (Docket #36) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for extension of time (Docket #37) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for evaluation by an off-site specialist (Docket #45) be and the same is hereby **DENIED**;

**IT IS FURTHER ORDERED** that Plaintiff's motion for a legal loan and extension of time (Docket #54) be and the same is hereby **GRANTED in part and DENIED in part** as stated in the terms of this order;

**IT IS FURTHER ORDERED** that Defendant Susan Peters' motion to strike Plaintiff's supplemental materials (Docket #76) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Susan Peters' motion for joinder to motion to extend time (Docket #77) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Defendant Susan Peters' motion for summary judgment (Docket #80) be and the same is hereby **DENIED as moot**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to modify the scheduling order (Docket #92) be and the same is hereby **GRANTED**;

**IT IS FURTHER ORDERED** that the scheduling order in this case (Docket #27) be and the same is hereby **AMENDED** as follows:

Discovery is to be completed **within thirty (30) days** of the entry of this order; and

Dispositive motions are to be submitted **within forty-five (45) days** of the entry of this order.

**No further extensions of time will be granted.**

Dated at Milwaukee, Wisconsin, this 27th day of August, 2019.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge