# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

JAMAL D. BIRKLEY,

    Plaintiff,

v.

DR. MANUEL JOSEPH, JEAN LUTSEY, and SUSAN PETERS,

    Defendants.

Case No. 18-CV-1024-JPS

**ORDER**

    Plaintiff, a prisoner proceeding *pro se*, alleges that his Eighth Amendment right to medical treatment was violated when he was denied surgery for his torn anterior cruciate ligament ("ACL"). *See* (Docket #16). On August 27, 2019, the Court granted Defendants' motions for partial summary judgment on the issue of exhaustion. (Docket #96). The Court determined that the following claims remained for resolution: (1) a deliberate indifference claim against Dr. Joseph ("Joseph") and Jean Lutsey ("Lutsey") for denial of medical treatment for Plaintiff's torn ACL; and (2) a deliberate indifference claim against Susan Peters ("Peters") for denial of medical treatment when she withheld access to a shower chair. *Id.* at 6–7. Defendants subsequently moved for summary judgment on Plaintiff's remaining claims (Docket #103, #108). After a series of setbacks and discovery issues, those motions are fully briefed. For the reasons explained below, they will be granted and the case will be dismissed.

    Before reaching the merits of the summary judgment motions, the Court will address the other pending motions. Shortly after the motions for summary judgment were filed, Plaintiff moved to amend his complaint.

(Docket #114). That motion will be denied for reasons that will be explained in more detail below. Plaintiff's motions for an extension of time (Docket #119, #127), however, will be granted in light of the delays in obtaining discovery. *See* (Docket #113, #121). Consequently, the Court will consider Plaintiff's late-filed opposition and proposed findings of fact in evaluating the summary judgment motions. (Docket #129, #130).

Defendants Joseph and Lutsey's motion to strike, (Docket #140), will be denied as moot because Plaintiff's re-filed proposed findings of fact is a response to the Clerk's request that he resubmit legible copies of his brief and proposed findings of fact. *See* (Docket #130, #131, #139). Finally, Plaintiff's motion for sanctions against Peters will be denied. (Docket #121). It appears that Peters complied with the Court's order to respond to discovery and timely mailed the documents to Plaintiff, (Docket #123), but there was some delay in those documents reaching Plaintiff. The Court has attempted to rectify any prejudice caused by this delay by allowing Plaintiff more time to respond to summary judgment. Under these circumstances, sanctions are not warranted.

1. **MOTION TO AMEND**

Federal Rule of Civil Procedure 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). Courts favor granting leave to amend, but they act within their discretion to deny such leave when there is a substantial reason to do so. *Select Creations, Inc. v. Paliafito Am., Inc.*, 830 F. Supp. 1213, 1216 (E.D. Wis. 1993). This includes undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment. *Foman v. Davis*,

371 U.S. 178, 182 (1962); *Campania Mgmt. Co. v. Rooks, Pitts & Poust*, 290 F.3d 843, 849 (7th Cir. 2002).

The Court must deny Plaintiff's motion to amend. First, as a general matter, it would be prejudicial and imprudent to allow the amendment at this stage in the litigation. Plaintiff has waited until after the dispositive motion deadline, which was October 12, 2019, to supplement his claims of deliberate indifference and add a defendant. These claims, if permitted, would alter the scope and trajectory of the litigation and require additional discovery. This would, in turn, force Defendants to incur added expense and cause considerable disruption in the Court's longstanding trial schedule, which has been in place, despite several amendments, since early December 2018. *See* (Docket #27); *Campania*, 290 F.3d at 849 ("A trial court may deny leave to amend when the amendment would cause the opposing party to bear additional discovery costs litigating a new issue[.]").

Second, Plaintiff's proposed amended complaint would not survive screening, even under the extremely liberal standards afforded to *pro se* litigants. As a threshold matter, Plaintiff's amended complaint does not allege a claim for deliberate indifference against the new defendant, Dr. Tannan, who he mistakenly believed was Dr. Joseph. Plaintiff makes additional allegations against the physician in his amended complaint, claiming that Dr. Tannan was deliberately indifferent to Plaintiff's ACL tear when he characterized Plaintiff as ambulatory and not in acute discomfort when, in fact, Plaintiff had difficulty walking, could not climb stairs, and suffered acute discomfort. (Docket #114 at 3). However, the amended complaint does not suggest that this mischaracterization was made with deliberate indifference to Plaintiff's serious medical need, particularly because Plaintiff later alleges that Dr. Tannan also treated Plaintiff for his

mobility issues and his pain. Specifically, Plaintiff states that Dr. Tannan referred Plaintiff to a physical therapist, prescribed medications, and conducted an MRI, after which he ultimately concluded that surgery was not necessary. *Id.* Plaintiff disagrees with this determination, but that disagreement does not give rise to an issue of constitutional magnitude. *McGowan v. Hulick*, 612 F.3d 636, 641 (7th Cir. 2010) (a dispute over "one routine medical procedure versus another. . .is not enough to state an Eighth Amendment claim."); *see also Farmer v. Brennan*, 522 U.S. 825, 844 (1994) (holding that "prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.").

Plaintiff also purports to bring a new claim against previously dismissed defendant Kathy Lemens, but there are no allegations against her in the amended complaint. Nor does the amended complaint bring new claims against Lutsey; it simply re-iterates allegations against her with renewed specificity. Finally, Plaintiff makes additional allegations against Peters, claiming that she not only willfully denied him access to a shower chair despite the fact that she knew he had a torn ACL, but also wrongfully took his knee brace and then gave him a new one that did not fit properly. *Id.* at 5. These allegations were dismissed as to Peters in the Court's previous order because she was not named in the inmate complaints regarding the untreated ACL and lack of brace. *Id.* at 7. Accordingly, the Court determined that the claims had not been exhausted as to her. *Id.* That procedural fact remains, despite Plaintiff's more robust allegations.

## 2. MOTION FOR SUMMARY JUDGMENT

### 2.1 Legal Standard

Federal Rule of Civil Procedure 56 provides that the Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Boss v. Castro*, 816 F.3d 910, 916 (7th Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chi. Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that h[is] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

### 2.2 Relevant Facts

In April 2016, Plaintiff injured his knee while playing basketball. He received some medical care for the injury at Green Bay Correctional Institute ("GBCI"), including an X-Ray on April 21, 2016 and an MRI on June 24, 2016. The MRI revealed a "high grade ACL tear" that was either complete or nearly complete. In July 2016, Plaintiff saw Dr. Tannan, who noted that Plaintiff was ambulatory but had difficulty with stairs. The exam

indicated that Plaintiff could walk and was not in acute discomfort, and prescribed physical therapy. Dr. Tannan also noted that Plaintiff would be released from prison in September 2016.

Despite Dr. Tannan's observations, Plaintiff continued to experience pain and suffering related to the torn ACL. Plaintiff was released from prison on September 13, 2016, but reincarcerated on October 7, 2016. His injury persisted. At some point after returning to prison, Plaintiff fell in his cell due to his unstable ACL tear. The fall worsened his injury. Plaintiff alleges that the Healthcare Services Unit ("HSU") neglected to see him until four days after the slip and fall. The parties dispute this fact, and there does not appear to be evidence to prove or disprove it.

Peters was involved in Plaintiff's care starting in 2017. She oversaw his pain relief medication, imposed a no-kneel restriction, instructed him to do physical therapy exercises, and prescribed a brace for him. Because Plaintiff was held in a Restrictive Housing Unit ("RHU") for certain portions of his sentence, there were times when he could only use a Neoprene sleeve for his knee rather than a stronger brace with metal hinges. In mid-September 2017, Plaintiff requested a shower chair. There is a dispute as to whether he made this request to Peters or another nurse. Peters did not make a note of the request in her files. Plaintiff claims that he spoke with both Peters and Lemens about needing a chair. Lemens told Peters, who told Plaintiff, that he could not have a shower chair because it was not medically necessary. Peters does not recall this. Regardless of whether or not this happened, in Peters' estimation, it would not have been medically necessary for Plaintiff to have a shower chair because he was able to stand and walk without assistance for brief periods of time, and showers were never longer than five minutes twice per week. Plaintiff submitted an

inmate complaint alleging that Peters denied him a shower chair. In November 28, 2017, Peters ordered an orthopedic consultation for Plaintiff's ACL, which was scheduled for January 10, 2018.

While these events unfolded, Lutsey was the HSU Manager. Plaintiff alleges that he wrote to Lutsey three times about his torn ACL. Each time, he claims that he inquired about getting a shower chair and a plan of care for his ACL. However, Plaintiff's file only includes two communications involving Lutsey. One communication, from March 2017, was not relevant to the facts of this case. Another communication, from September 23, 2017, was difficult to read, and though it was forwarded to Lutsey, Plaintiff never received a response.

Nevertheless, Plaintiff contends that Lutsey was aware of his medical issues and did not get involved. He believes that one of his complaints, which was written on a dental services request form because he did not have access to the proper form, must have been triaged by the nurses in the HSU and forwarded to Lutsey. There is no evidence in the record to support this contention, however.

It does appear that Lutsey reviewed Plaintiff's inmate complaints and had some familiarity with his medical history, if not a perfect recollection. For example, in response to inquiries from inmate complaint examiners, Lutsey mistakenly said that Plaintiff had received an MRI while he was released—in actuality, he had received the MRI while in prison. This mistake does not appear to have had any effect on Plaintiff's care. In July 2017, Plaintiff submitted GBCI-2017-18761, in which he complained that HSU refused to treat him for his ACL tear. Lutsey responded to this complaint, indicating that he had been seen for this issue on June 21, 2017, a month before he submitted the complaint. In February 2018, Plaintiff

complained again that he was denied treatment for his torn ACL. Upon looking into the issue, Lutsey responded that Plaintiff had been seen by a nurse practitioner and was using a brace.

### 2.3 Analysis

Prisoners are entitled to a minimal level of healthcare while in custody. *Petties v. Carter*, 836 F.3d 722, 727–28 (7th Cir. 2016). The Eighth Amendment is violated when the prisoner shows that they "suffered from an objectively serious medical condition," and that "the individual defendant was deliberately indifferent to that condition." *Id.* at 728. The Seventh Circuit neatly summarized the claim in *Gayton v. McCoy*:

> [T]he plaintiff must show that: (1) [he] had an objectively serious medical condition; (2) the defendants knew of the condition and were deliberately indifferent to treating h[im]; and (3) this indifference caused h[im] some injury. An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated.
>
> With regard to the deliberate indifference prong, the plaintiff must show that the official acted with the requisite culpable state of mind. This inquiry has two components. The official must have subjective knowledge of the risk to the inmate's health, and the official also must disregard that risk. Evidence that the official acted negligently is insufficient to prove deliberate indifference. Rather, "deliberate indifference" is simply a synonym for intentional or reckless conduct, and that "reckless" describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred. Simply put, an official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the

inference. Even if a defendant recognizes the substantial risk, he is free from liability if he responded reasonably to the risk, even if the harm ultimately was not averted.

593 F.3d 610, 620 (7th Cir. 2010) (citations and quotations omitted). In sum, "deliberate indifference means actual, personal knowledge of a serious risk, coupled with the lack of any reasonable response to it." *Ayoubi v. Dart*, 724 F. App'x 470, 474 (7th Cir. 2018).

"Neither medical malpractice nor mere disagreement with a doctor's medical judgment is enough to prove deliberate indifference." *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010). Medical professionals are "entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." *Sain v. Wood*, 512 F.3d 886, 894–95 (7th Cir. 2008) (citations and quotations omitted). To prevail on a claim for deliberate indifference, Plaintiff must demonstrate that the medical professional made "such a substantial departure from accepted professional judgment, practice, or standards, as to demonstrate that the person responsible actually did not base the decision on such a judgment." *Id.* at 895. "Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation." *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014).

Additionally, liability in Section 1983 cases "depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise." *Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). To hold a supervisor liable, he or she "must know about the conduct and

facilitate it, approve it, condone it, or turn a blind eye." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

There is no dispute that Plaintiff's ACL tear constituted a serious medical injury for the purpose of these motions, so the Court will focus on whether there is evidence from which a reasonable jury could find that Defendants acted with deliberate indifference. There are no facts supporting Joseph's involvement in the allegedly wrongful conduct, so the claim against him will be dismissed. Additionally, as discussed above, the allegations made against Dr. Tannan are insufficient to raise a claim for deliberate indifference, and the parties' proposed facts confirm this.

As to Peters, the facts demonstrate some issue of fact as to whether she received Plaintiff's request for a shower chair, or whether the request was directed to another nurse. But even construing the facts in favor of Plaintiff, as the Court must at this stage, and assuming that Peters received the request and denied it, there is insufficient evidence that she was deliberately indifferent in doing so. Plaintiff himself asserts that Peters inquired with Lemens about the shower chair option, and was told it was not medically necessary. For her part, Peters now explains that in her professional medical opinion, a shower chair would not have been necessary because Plaintiff was able to stand and walk unassisted for brief periods of time, and showers were only for five minutes, twice per week. While Plaintiff may have disagreed with this opinion because he was in pain, this does not render Peters deliberately indifferent. Rather, it demonstrates an exercise of medical judgment and a conclusion that the serious medical condition was not so prohibitive as to warrant a shower chair. Second, the evidence does not suggest that Peters ignored Plaintiff's complaints. To the contrary, she prescribed pain reliever, physical therapy

exercises, a knee brace that met the qualifications of his housing unit, and ordered an orthopedic consultation when Plaintiff's complaints persisted. While Plaintiff disagrees with the extent of these efforts—i.e., he believes that the treatment should have included a shower chair—this does not render Peters' actions deliberately indifferent. *See Farmer*, 522 U.S. at 844 ("prison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted."). Even construed in Plaintiff's favor, a reasonable jury could not find from these facts that Peters acted with deliberate indifference to Plaintiff's medical needs.

Similarly, there is insufficient evidence to support that Lutsey, as HSU manager, acted with deliberate indifference towards Plaintiff's serious medical needs. Even if the Court assumes that Lutsey knew about Plaintiff's ongoing ACL tear from the complaints that he sent her, there is no evidence that Lutsey willfully "turn[ed[] a blind eye" to his suffering. *Gentry*, 65 F.3d at 561. The evidence demonstrates that Lutsey reviewed Plaintiff's medical records when contacted by inmate examiners about his complaints, and, based on those records, believed that Plaintiff was receiving adequate medical care. Certainly, the evidence demonstrates that she was not well-versed in the particulars of his condition (i.e., she stated that he received an MRI while released from prison, when he actually received it in prison), but that is not the standard for deliberate indifference. Deliberate indifference requires a willful disregard of a serious need. Lutsey, as a supervisor, responded to Plaintiff's complaints and examined Plaintiff's medical records, which did not suggest that he was left untreated. Accordingly, Lutsey did not act with deliberate indifference to Plaintiff's serious medical need.

3.  **CONCLUSION**

For the reasons explained above, Defendants' motions for summary judgment will be granted, and the case will be dismissed. There is simply no evidence from which a reasonable jury could find that any of the named defendants acted with deliberate indifference towards Plaintiff's serious medical need.

Accordingly,

**IT IS ORDERED** that Defendant Susan Peter's motion for summary judgment (Docket #103) and Defendants Manuel Joseph and Jean Lutsey's motion for summary judgment (Docket #108) be and the same are hereby **GRANTED**;

**IT IS FURTHER ORDERED** that Plaintiff's deliberate indifference claim against Defendants Manuel Joseph and Jean Lutsey for denial of medical treatment for his torn ACL be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's deliberate indifference claim against Defendant Susan Peters for denying him medical treatment by withholding access to a shower chair be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Plaintiff's motion to amend (Docket #114) be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that Plaintiff's motion for sanctions (Docket #121) be and the same is hereby **DENIED;**

**IT IS FURTHER ORDERED** that Plaintiff's motions for extension of time (Docket #119 and #127) be and the same are hereby **GRANTED;**

**IT IS FURTHER ORDERED** that Defendants Manuel Joseph and Jean Lutsey's motion to strike (Docket #140) be and the same is hereby **DENIED as moot**; and

**IT IS FURTHER ORDERED** that this action be and the same is hereby **DISMISSED**.

The Clerk of the Court is directed to enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 28th day of February, 2020.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge